UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAY QUIGLEY,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     Case No. 3:21cv1158 (MPS) |
| | : |
| CAPTAIN WILLIAMS, et al.,<br>    Defendants. | :<br>: |

## RULING ON MOTION FOR SUMMARY JUDGMENT

On August 30, 2021, Plaintiff Jay Quigley, a sentenced inmate confined within the custody of the Department of Correction ("DOC"), commenced this action *pro se* pursuant to 42 U.S.C. § 1983 against several DOC employees who worked at Corrigan-Radgowski Correctional Center ("Corrigan"). *See* Compl., ECF No. 1. On initial review, the Court permitted Quigley to proceed on his claims for damages for alleged excessive force against correctional staff and for alleged medical deliberate indifference against Nurse Allison Hill. Initial Review Order ("IRO"), ECF No. 7.

On March 30, 2022, Defendant Hill filed a motion for summary judgment, arguing that Quigley failed to exhaust his administrative remedies for his claim of medical indifference as required by the Prison Litigation Reform Act ("PLRA").[1] Mot. for Summ. Judg., ECF No. 22. Quigley filed an opposition on May 5, 2022. Pl.'s Opp., ECF No. 30. Defendant Hill filed a reply on May 19, 2022. Reply, ECF No. 32.

---

[1] In an order dated February 4, 2022, the Court instructed Hill that in lieu of an answer, she could file a notice indicating that she believed there to be a basis for asserting a defense of exhaustion or release that would warrant an early motion for summary judgment. Order, ECF No. 17. On February 28, 2022, Defendant Hill filed her notice indicating that there was a basis for asserting a defense of exhaustion. Notice, ECF No. 20.

1

For the reasons set forth below, the Court grants Defendant Hill's motion for summary judgment.

## I.     FACTUAL BACKGROUND[2]

The following factual background reflects the Court's review of the complaint,[3] the parties' Local Rule 56(a) statements of facts, and all supporting materials. *See* Compl., ECF No. 1; Def's Rule 56(a)1, ECF No. 22-2; Pl.'s Rule 56(a)2, ECF No. 30. All facts are undisputed unless otherwise indicated.[4]

### A.     Quigley's Allegations

In his Eighth Amendment claim against RN Hill, Quigley alleges the following facts:

After he was allegedly subjected to excessive force by correctional staff during a cell extraction on March 23, 2021, Quigley was brought to the medical screening room where he met with RN Hill for evaluation. Compl., ECF No. 1 at ¶¶ 47-63. He pleaded with her for an outside

---

[2] Generally, the court cites only the relevant paragraph in the Local Rule 56(a)1 Statement where a fact is not disputed. The page numbers cited in this ruling regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

[3] *See Jordan v. LaFrance*, No. 3:18-cv-01541 (MPS), 2019 WL 5064692, at *1 n.1, *4 (D. Conn. Oct. 9, 2019) (a "verified complaint ... may be considered as an affidavit" for summary judgment purposes"); *Walcott v. Connaughton*, No. 3:17-CV-1150, 2018 WL 6624195, at *1, n. 1 (D. Conn. Dec. 18, 2018).

[4] Defendant Hill provided Quigley with a notice in compliance with Local Rule of Civil Procedure 56(b) that informed him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56. Notice to *Pro Se Litigant*, ECF No. 22-5. Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

medical evaluation and informed her that he was dizzy and had pain all over his face and body. *Id.* at ¶ 64. RN Hill, who appeared confused, looked over to Lieutenant Daniels, who then indicated that Quigley did not need to have an outside evaluation. *Id.* RN Hill then stated, "No, we'll get you some Ibuprofen." *Id.* RN Hill then took off Quigley's safety veil and splashed his eyes with water to clean off the mace, which made Quigley's face feel as if it were on fire. *Id.* at ¶ 65.

Quigley was then led out of the medical unit and strip searched. *Id.* at ¶ 66. After he was dressed, cuffed and shackled, Quigley requested to go the hospital. *Id.* He was then brought to the medical unit for a second evaluation by RN Hill. *Id.* at ¶ 67. He pleaded again for an outside medical evaluation and explained how his back, neck, spine, ribs, face and joint were in severe pain. *Id.* He explained that he felt dizzy and as if he would throw up. *Id.* She responded by telling other staff that Quigley was all right and that she would bring him some Ibuprofen. *Id.*

Quigley was later brought to the segregation unit and locked in a cell. *Id.* at ¶ 68. He felt so dizzy and disoriented that he threw up in the toilet. *Id.* at ¶ 69.

Later that evening, RN Hill saw Quigley in his segregation cell. *Id.* at ¶ 70. Quigley told her that he threw up from being too dizzy and that he needed to go to the hospital. *Id*. at ¶ 71. RN Hill did not provide for him to go to the hospital and only asked him about where he left the vomit. *Id.* After she left, no medical staff checked on Quigley during the night while Quigley lay in bed with severe pain and mace all over his body. *Id.*

On March 24, 2021, Quigley was provided with a shower at 11:00 AM. *Id.* at ¶ 71. When he washed off the mace, he reignited the burning sensation from the mace on his body and lacerations. *Id.* at ¶ 72.

On March 24, 2021, Quigley was sent to the hospital for evaluation after another nurse assessed his injuries. *Id.* at ¶¶ 76-77. An x-ray showed an upper spinal injury. *Id.* at ¶ 78.

On initial review, the Court concluded that Quigley's allegations raised plausible Eighth Amendment claims against RN Hill for (1) failure to refer him for an outside medical evaluation due to influence from Lieutenant Daniels rather than her own medical judgment; and (2) deliberate indifference to his medical needs by failing to provide him with adequate medical treatment for his obvious serious injuries after he was allegedly subjected to excessive force on March 23, 2021. ECF No. 7 at 15-17.

   B.  <u>Exhaustion of Quigley's Administrative Remedies</u>

When Quigley sustained injuries and was evaluated by Nurse Hill on March 23, 2021, the Connecticut DOC Administrative Directive ("A.D.") 8.9 (revision of July 24, 2012) was in effect.[5] Def's Rule 56(a)1 at ¶¶ 1-3.   That version of the directive is summarized below.

A.D. 8.9 (entitled Administrative Remedy for Health Services) governs the administrative remedies for health services at Connecticut DOC facilities. It provides for two types of Health Services Review ("HSR"); first, "Diagnosis and Treatment," which includes a decision not to provide treatment, and second, "Review of an Administrative Issue," which addresses concerns regarding "a practice, procedure, administrative provision or policy, or an allegation of improper conduct by a health services provider." A.D. 8.9(9). Both types of HSRs require an inmate to "seek an informal resolution prior to filing for a [HSR]." *Id.* at 8.9(10). That

---

[5] This version of A.D. 8.9 remained in effect until a revision took effect on April 30, 2021. Def.'s ex. 3, ECF No. 22-4. *See* A.D. 8.9 available at https://portal.ct.gov/DOC/AD/AD-Chapter-8 (last visited October 20, 2022); *Sanchez v. RN Debbie*, No. 3:18-CV-1505 (JCH), 2018 WL 5314916, at *2 (D. Conn. Oct. 26, 2018) (The Court may "take judicial notice of relevant matters of public record.") (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)).

4

informal resolution attempt must occur either "face to face with the appropriate staff member or with a supervisor via written request utilizing CN 9601 Inmate Request Form." *Id.* If an inmate pursues the written option, a DOC official must respond within 15 calendar days. *Id.*

An inmate who is dissatisfied with a diagnosis or treatment may apply for a Health Services Review "if the informal resolution via inmate request was unsuccessful." A.D. 8.9(11). The inmate must check the Diagnosis/Treatment box on the form (CN 9602), explain concisely the cause of dissatisfaction, and deposit the form in the Health Services Remedies/Review box. *Id.* Upon receipt of a CN 9602, the Health Services Review Coordinator shall schedule a Health Services Review Appointment with the appropriate health care provider. A.D. 8.9(11)(A). "If the physician decides that the existing diagnosis or treatment is appropriate, the inmate shall have exhausted the health services review." *Id.* "The physician shall notify the inmate of the decision, in writing, within ten business days by indicating 'No Further Action' in the disposition field of CN 9602, Inmate Administrative Remedy Form." *Id.* "If the physician decides that a different diagnosis or treatment is warranted, he/she may either (1) act on his/her decision; or, (2) refer the case to the [URC] for authorization by indicating 'Change of Treatment' or 'Referred to URC' as appropriate[.]" A.D. 8.9(11)(B).

An inmate may request review of an Administrative Issue by checking the box marked "All Other Health Care Issues" on the Health Services Review form (CN 9602); the inmate must provide a concise statement of what the inmate believes to be wrong and how the inmate has been affected, and the inmate must deposit the form in the Health Services box. A.D. 8.9(12). This request for review shall be evaluated by a Health Services Review Coordinator within thirty days. A.D. 8.9(12)(A). If the inmate is dissatisfied with the response, the inmate may appeal the

5

decision within ten business days. A.D. 8.9(12)(B). The appeal is decided and responded to by the designated facility health services director or designee within fifteen days. A.D. 8.9(12)(C). For all issues relating to compliance with existing standards, this review is final, and the inmate shall have exhausted the requisite Health Services Review process. *Id.* If the matter "relates to a health service policy of the Department, the inmate may appeal to the DOC Director of Health Services" within ten business days from the receipt of the response. A.D. 8.9(12)(D). The Director has thirty days to respond. A.D. 8.9(12)(E). Upon receipt of this decision, the inmate shall have exhausted the Health Services Review for an Administrative Issue. *Id.*

Records of all requests and appeals must be maintained by the health services review coordinator. A.D. 8.9(13).

HSR Coordinator Brennan avers that she reviewed the HSR Administrative Log for the period between March 1, 2021 through March 1, 2022 to determine whether Quigley had filed any HSRs under A.D. 8.9. Def.'s ex. 2, Brennan decl. at ¶ 3, ECF No. 22-3. RN Brennan determined that Quigley had not filed any HSRs under A.D. 8.9 during that period. *Id.* at ¶ 4.

Quigley avers that he submitted grievances in accordance with A.D. 9.6. *See* Pl.'s Aff. at ¶¶ 27-29, ECF No. 30; Pl.'s ex. A, Grievances, ECF No. 30 at 26-31.

## II. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (internal quotation marks and citations omitted). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant." *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

### III.  DISCUSSION

The PLRA, which governs actions brought by prison inmates, requires a prisoner to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions.[6] 42 US.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA; *Jones v. Bock*, 549 U.S. 199, 217 (2007); and a defendant bears the burden to prove that an inmate did not exhaust his or her remedies prior to filing the action in court. *See Johnson v. Mata*, 460 Fed. App'x 11, 15 (2d Cir. 2012) ("The defendants have the burden of showing that there is no genuine issue of material fact as to exhaustion that would preclude summary judgment.").[7]

---

[6] Section 1997e(a) provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

[7] Although the defendant bears the burden on this affirmative defense at all times, the plaintiff may still have to adduce evidence in order to defeat a motion for summary judgment. *See Hudson v. Kirkey*, No. 920CV0581 (LEK/DJS), 2021 WL 1966721, at *3 (N.D.N.Y. May 17, 2021) (explaining that once defendant introduces evidence of a functional grievance system, plaintiff could not survive summary judgment without submitting competent evidence to indicate unavailability). While it is the defendant's burden to establish the plaintiff's failure to meet the exhaustion requirement, the plaintiff bears the burden

Section 1997e(a) applies to all claims regarding prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and it requires exhaustion of any available administrative remedies, regardless of whether they provide the relief the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). A claim is not exhausted until the inmate complies with all administrative deadlines and procedures. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Bock*, 549 U.S. at 218.

One purpose of the PLRA is to afford inmates and corrections officials an opportunity to address complaints internally before engaging in federal litigation. *Woodford*, 548 U.S. at 93–94. Thus, proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* "[I]nmates must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004). Informal efforts to put prison officials on notice of inmate concerns do not satisfy the exhaustion requirement. *See Marcias v. Zenk*, 495 F.3d 37, 43-44 (2d Cir. 2007).

If the deadline to file a grievance has passed, an unexhausted claim is barred from federal court. *See Woodford*, 548 U.S. at 95. Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirements." *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (quoting *Woodford*, 548 U.S. at 83–84).

The exhaustion requirement, however, may be excused when the remedy is not available

---

of demonstrating that such a process was unavailable. *Brooks v. Mullen*, No. 14-CV-6690-FPG, 2020 WL 6158614, at *5 (W.D.N.Y. Oct. 21, 2020) (citations omitted).

in practice even if it is "officially on the books." *See Ross v. Blake*, 578 U.S. 632, 642-643 (2016). This means that "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (quoting *Booth*, 532 U.S. at 738). The United States Supreme Court has established three circumstances under which an inmate need not exhaust the administrative procedure as it is deemed unavailable: (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when a procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-644. "Whether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015).

A plaintiff must exhaust his administrative remedies before filing an action in federal court. *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds*, *Porter*, 534 U.S. 516; *Gulley v. Bujnicki*, No. 3:19-CV-903 (SRU), 2019 WL 2603536, at *3 (D. Conn. June 25, 2019).

The record substantiates that Quigley failed to exhaust his administrative remedies for his Eighth Amendment medical indifference claims against Nurse Hill under Directive 8.9. Quigley submitted grievances under Directive 9.6 concerning his alleged assault, injuries, and failure to receive medical attention. *See* Pl.'s ex. A, ECF No. 30 at 26-30. But the relevant version of

Directive 9.6[8] states that a "[r]equest for review of any matter relating to the delivery of health care services shall be in accordance with Administrative Directive 8.9 Health Services Review." *Id.* at 118. On the grievance form he submitted, Quigley checked box "A," next to "I am filing a Grievance," rather than box B, next to "I am requesting a Health Services Review." ECF No. 30 at 28.

The PLRA "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91. Thus, Quigley could only effect exhaustion of his Eighth Amendment claims against Nurse Hill by "using all steps" under A.D. 8.9 and "doing so *properly*[.]" *See id.* at 93–94. The undisputed record demonstrates that Quigley failed to do so, although he had access to, and was able to file, his CN 9602 and appeal for his remedies under A.D. 9.6. Thus, the record raises no inference that Quigley exhausted his remedies under A.D. 8.9 or that his remedies were not available as contemplated by *Ross*. *See Otero v. Purdy*, 2021 WL 4263363, *10 (D. Conn. Sept. 20, 2021) (noting plaintiff's prior grievance filing demonstrated availability of administrative remedies). Accordingly, the Court must grant Defendant Hill's motion for summary judgment on grounds of nonexhaustion.

## IV. CONCLUSION

For the foregoing reasons, Defendant Hill's motion for summary judgment [ECF No. 22]

---

[8] The revised Directive 9.6 went into effect on April 30, 2021. *See* A.D. 9.6 available at https://portal.ct.gov/DOC/AD/AD-Chapter-9.

10

is GRANTED. The Clerk is instructed to terminate Hill as a defendant in this action.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 8th day of November 2022, at Hartford, Connecticut.